IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| IN RE:  LARRY JAMES HARTSFIELD, Debtor | CASE NO.: 4:09-bk-13594 |
| | CHAPTER 11 |
| TODD SNEED, Successor Trustee of the George Wright Lescher Trust, and Personal Representative of the George Hamilton Lescher Estate | PLAINTIFF |
| vs.    AP NO.: 4:09-ap-01202 | |
| LARRY JAMES HARTSFIELD | DEFENDANT |

**MEMORANDUM OPINION**

On August 10, 2009, Todd Sneed ("Sneed"), Successor Trustee of the George Wright Lescher Trust and Personal Representative of the George Hamilton Lescher Estate, filed a *Complaint to Determine Dischargeability and Objection to Debtor's Exemptions* ("Complaint"). The debtor ("debtor"), Larry James Hartsfield, filed an *Answer to Complaint to Determine Dischargeability and Objection to Debtor's Exemptions* on August 13, 2009. The parties tried the adversary proceeding on March 24, 2010. The court afforded the parties additional time to brief the matter.[1] For the reasons stated below, the Complaint is granted in part, reserved in part, and denied in part.

**I.  JURISDICTION**

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

---

[1] The debtor filed a *Brief in Opposition to Complaint to Determine Dischargeability and Objection to Debtor's Exemptions* on April 26, 2010. Sneed responded on May 6, 2010 with a *Brief in Support of Complaint to Determine Dischargeability* ("Response Brief"). The debtor subsequently replied on May 10, 2010 with a *Reply Brief* and an *Amended Reply Brief*.

1

## II. FINDINGS OF FACT

The debtor filed his voluntary bankruptcy petition on May 20, 2009. On August 10, 2009, Sneed filed his Complaint requesting that this court deny the debtor's discharge pursuant to 11 U.S.C. § 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity.[2] Sneed's Complaint relies upon two state court orders finding the debtor liable for actions taken while in a fiduciary capacity as trustee and personal representative. Though the debtor acknowledges the existence of a fiduciary relationship, he claims that the bases for the state court judgments are without merit; namely, that he acted appropriately as trustee and personal representative and that any missteps on his part, specifically his inability to produce records associated with his activities as trustee and personal representative, are the result of mere negligence or innocent mistake.

At trial, Sneed testified that George Wright Lescher ("G.W. Lescher") died in Tennessee in December of 1980. Prior to his death, G.W. Lescher executed a Last Will and Testament. (Ex. 1.) G.W. Lescher's will left the vast majority of his estate to the George Wright Lescher trust, which was created primarily for the benefit of George Hamilton Lescher ("G.H. Lescher") and John Perry Lescher ("Perry Lescher"), the surviving sons of G.W. Lescher. The will designated the Cross County Bank of Wynne, Arkansas as trustee. (Ex. 1.) The Cross County Bank served as trustee until its request to be discharged was granted on August 19, 1986. (Ex. 2A.) Pursuant to a request by the Lescher brothers, the court named the debtor as the temporary successor trustee. (Ex. 2A.) On May 1, 1996, Judge Bentley E. Story, Cross County Circuit Judge, entered an order terminating the court's supervision of the debtor as trustee. (Ex. D1.) The debtor

---

[2] In his Complaint, Sneed references section 522(a)(4) rather than section 523(a)(4). Though not raised by either party in their pleadings or during trial, the court, pursuant to Federal Rule of Civil Procedure 8(e) as incorporated by Federal Rule of Bankruptcy Procedure 7008, construes the pleading to reference section 523(a)(4) "so as to do justice."

continued to serve as trustee until October 8, 2007, when an order of the Cross County Circuit Court relieved the debtor of his duties and appointed Sneed as the successor trustee. (Ex. 2C.)

Between 1996 and 2003, both beneficiaries of the G.W. Lescher trust died. Following G.H. Lescher's death in 2003, the debtor filed a holographic will, which left all of G.H. Lescher's estate to the debtor. The debtor was thereafter appointed personal representative of the G.H. Lescher estate. After a hearing on the validity of the will, the Honorable Bentley Story ruled that the holographic will was procured by undue influence as G.H. Lescher "lacked the capacity to handle his own affairs." (Ex. 2D at 10.) The court further held that "Mr. Hartsfield [wa]s not entitled to act as the personal representative of the estate;" therefore, Danny Glover was temporarily "appointed as the personal representative. . ." (Ex. 2D at 12.) Sneed, the son-in-law of G.H. Lescher, petitioned the court thereafter and was appointed personal representative on October 8, 2007. (Ex. 2C.)

Once appointed, Sneed began to investigate the previous actions of the debtor. In addition to requesting an accounting of all funds and assets administered by the debtor in his capacity as the personal representative of the G.H. Lescher estate in the probate proceeding, Sneed filed a separate action in the Cross County Circuit Court requesting an accounting of the debtor's actions as trustee for the G.W. Lescher trust. Both courts ordered the debtor to file an accounting documenting his activities. After separate hearings, the respective courts issued letter opinions later incorporated into court orders.

The Honorable Bentley E. Story heard the probate case concerning the estate of G.H. Lescher. In a letter opinion dated February 16, 2009, the court found that during the course of his service as personal representative for the estate, the debtor "paid out of the estate's funds $6,545.51 to his law partner, Mr. William G. Almand; to himself; and to expert witnesses. Most

of these payments were in defense of the challenge to the probate of the holographic will he filed for probate." (Ex. 2I at ¶ 2.) The court further noted that "[a]s personal representative, Mr. Hartsfield defended the probate of this will which benefitted him and him alone. Mr. Hartsfield was the beneficiary of the estate, and as the personal representative, who owes a duty to the estate and the heirs of the deceased, he could not, and should not, be allowed to charge the estate to defend a will which only benefitted him." (Ex. 2I at ¶ 4.) The court ordered the debtor to pay the G.H. Lescher estate the sum of $6,326.44, the difference between the amount expended in defending the holographic will and permissible expenses incurred by the debtor. The court's findings of fact and rulings were incorporated into an order entered on March 23, 2009. (Ex. 2H.)

The Honorable Kathleen Bell, Cross County Circuit Judge, heard the civil proceeding filed by Sneed, as successor trustee for the G.W. Lescher trust, against the debtor. After two hearings and a briefing period,[3] Judge Bell issued her letter opinion on January 27, 2009. The state court analyzed the obligations that characterize relationships between trustees and beneficiaries as well as attorneys and clients. Citing *Riegler v. Riegler*, 553 S.W.2d 37, 40 (Ark. 1977), the state court noted the following expectations of a trustee administering a trust:

> It is well settled that a trustee is held to a high standard of good faith and prudent dealing. He owes a duty of loyalty to the beneficiaries.
>
> In administering the trust, the trustee must act for the beneficiaries and not for himself in antagonism to the interest of the beneficiaries; he is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the beneficiaries and from placing himself in any position where his self interest will, or may, conflict with his duties.
>
> Our cases hold that beneficiaries may hold the trustee personally liable for a breach of trust.

---

[3] Judge Bell's letter opinion begins by noting that "[t]his memorandum opinion follows the hearings conducted in this matter on August 20 and on October 8, 2008. These hearings were conducted in the Cross County Courthouse, Wynne, Arkansas. Subsequent to those hearings, briefs were submitted on behalf of the parties." (Ex. 2G.)

4

(Ex. 2G at 3.) In addition to its legal analysis, the state court made the following factual findings: Perry Lescher and G.H. Lescher "were not competent to manage their money"; they "lived in squalor and poverty"; the debtor sold valuable farmland owned by the G.W. Lescher trust; the debtor opened an Oppenheimer account with funds received from the sale of the farmland to which Perry and G.H. Lescher did not have access; the debtor lost all the records associated with his activities as trustee "for the period of 1987 – April 2003"; and the debtor charged Perry and G.H. Lescher a $100,000 retainer for his services in addition to the $119,746 paid to the debtor by the G.W. Lescher trust during his service as trustee. (Ex. 2G at 4.)

In response to questions concerning the state court's factual findings, the debtor disputed the validity of the state court's order and contended that he properly managed the assets of the trust.[4] He stated that the valuable farmland was sold to satisfy a child support judgment obtained by G.H. Lescher's ex-wife; the funds contained in the Oppenheimer account were used to support Perry and G.H. Lescher's various expenses; and the records regarding the debtor's activities as trustee and personal representative were lost or misplaced during the debtor's relocation to a new office rather than an intentional failure to account for his activities.

One factual finding was key to the state court's opinion – that the debtor paid Gray Perry, an individual referenced in G.W. Lescher's will, the sum of $251,000 out of funds generated by the sale of real estate, even though G.W. Lescher's will called for a mere $3000. (Ex. 2G at 5.) At the state court trial, the debtor claimed that he was obligated to pay Gray Perry 24% of the

---

[4] During the trial of this adversary proceeding and in his supplemental briefs, the debtor repeatedly asked this court to act independently of the state courts' factual and legal findings and effectively render an opinion contrary to the state courts' orders. Based on the *Rooker-Feldman* doctrine, which is premised on the theory that "'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment,'" this court cannot and will not scrutinize or reverse the state courts' findings. *Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 754 (8th Cir. 2010) (citations omitted).

proceeds from the farmland sale even though nothing in the will reflected said requirement. (Ex. 2G at 5.) In addition, the debtor had no proof that he actually made the payment. (Ex. 2G at 5.) In contrast, at the trial of this adversary proceeding, the debtor asserted that he paid Gray Perry $251,000 to settle a potential real estate dispute between the G.W. Lescher estate and Gray Perry, which the debtor acknowledged was unenforceable due to the tolling of the statute of limitations for bringing such an action.

Based on its factual findings, the state court found the following: the debtor breached his fiduciary duty by purchasing "property owned by his clients/trust beneficiaries"; the debtor "breach[ed] this duty to his clients regarding the Eaton-Morey note"; and the debtor "failed in his duty with regard to the payment to Gray Perry." (Ex. 2G at 6.) In its order of March 17, 2009, the court incorporated its letter opinion and ordered the debtor to reimburse the G.W. Lescher estate in the sum of $298,000: $248,000 for the amount paid to Gray Perry beyond that provided for in G.W. Lescher's will and $50,000 for payments made to the debtor for trustee services that the debtor could not account for. (Ex. 2F at 3-4.) Sneed further noted that the debtor has failed to make any payments to the G.W. Lescher trust or the G.H. Lescher estate.

### III. DISCUSSION

Sneed contends that the debtor "should be denied a discharge of the debts and obligations . . . pursuant to 11 U.S.C. 522(a)(4) as a result of the Debtor/Defendant's conduct while acting in a fiduciary capacity as trustee of the George Wright Lescher Trust and as personal representative of the George Hamilton Lescher estate" based on the findings contained in the opinions and orders of the two state courts.[5] (Compl. at 6.)[6] In his Response Brief, Sneed further asserts that

---

[5] The court also notes that Sneed alleged an additional ground for relief, 11 U.S.C. § 523(a)(2); however, Sneed did not present any evidence at trial to support this cause of action. Thus, the court will not consider that ground.

6

"[t]he doctrine of collateral estoppel applies in this case to preclude the Debtor from relitigating these issues in bankruptcy court." (Resp. Br. at 9.)

"The doctrine of collateral estoppel precludes a court from conducting further proceedings on issues that have been litigated and ruled upon previously." *Rogers v. Bryant* (*In re Bryant*), Ch. 11 Case No. 5:04-bk-24598, Adv. No. 5:05-ap-1101, slip op. at 4 (Bankr. E.D. Ark. Sept. 13, 2005) (citing *Fisher v. Scarborough* (*In re Scarborough*), 171 F.3d 638, 641 (8th Cir. 1999)). If the elements of a breach of fiduciary duty claim in a state court action are the same as those set forth in 11 U.S.C. § 523(a)(4), the doctrine of collateral estoppel will prevent this court from relitigating the pending issues. *See Bryant*, at 4. "In determining whether the state court judgment is entitled to preclusive effect, the [c]ourt must apply the law of Arkansas." *Id*. (citing *Scarborough*, 171 F.3d at 641 (stating that the court must look to the substantive law of the forum state in applying collateral estoppel)). In Arkansas, four elements must be proven to establish collateral estoppel:

> (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.

*Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 761 (8th Cir. 2010) (citing *Powell v. Lane*, 289 S.W.3d 440, 444 (Ark. 2008)).

*1. The issue sought to be precluded must be the same as that involved in the prior litigation.*

In this proceeding, Sneed alleges that the debt is exempt from discharge under 11 U.S.C. § 523(a)(4) based on the state courts opinions and orders. Section 523(a)(4) provides that a

---

[6] In the Complaint, Sneed objected to the debtor's exemptions. The parties raised the exemption issue at the close of this trial and asked the court to reserve this issue. As no testimony or evidence was presented to the court on this matter, the court reserves this issue and does not make any factual or legal findings concerning the debtor's exemptions.

7

"discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"  "To prevail, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed defalcation in the course of that fiduciary relationship." *Counsell v. Colfack* (*In re Colfack*), 393 B.R. 222, 229 (Bankr. D. Neb. 2008) (citing *Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)). "'Acting in a fiduciary capacity' is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose." *Id.* (citations omitted).  In *Colfack*, the court elaborated on the definition of defalcation within the Eighth Circuit:

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds."  Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." … An individual may be liable for defalcation without having the intent to defraud.

*Id.* at 230 (citations omitted).

In the state probate proceeding, the court found that the debtor utilized estate funds to defend the probate of a holographic will that was procured by undue influence and benefitted only the debtor. (Ex. 2I at ¶ 2.)  Based on the probate court's opinion and order, this court is without sufficient evidence to determine whether the probate court was presented with the issue of or ruled on whether the debtor committed fraud or defalcation while acting in a fiduciary capacity.  Because the probate court did not make a finding that the debtor breached a fiduciary

duty, the probate court order awarding Sneed $6,326.44 does not meet the first element of collateral estoppel and will not be analyzed further.[7]

In the state court proceeding before the Honorable Kathleen Bell, the court analyzed the duties and obligations that arise between a trustee and the trust beneficiaries under Arkansas law prior to finding that the debtor breached his fiduciary duty in several respects, such as: the payment of $251,000 to Gray Perry in direct contravention of G.W. Lescher's will, and the debtor's failure to account for the disposition of assets and keep records of his activities during his service as trustee. (Ex. 2G.)  Because the state court's opinion and order clearly and conclusively found a breach of fiduciary duty by the debtor that would support an equivalent finding that the debtor committed a defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4), the first element of the collateral estoppel doctrine is met.

*2. That issue must have been actually litigated.*

Under the second element of collateral estoppel, "[t]he party against whom collateral estoppel is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first proceeding." *Powell*, 289 S.W.3d at 444 (citation omitted).  In Arkansas, "'only two things' are required for an issue to be 'actually litigated.'" *Dodson*, 601 F.3d at 761 (citation omitted).  "The test is (1) whether 'the issue was effectively raised in the pleadings, or through development of the evidence, and argument at trial or on motion,' and (2) whether 'the losing party had a full and fair opportunity procedurally, substantively, or evidentially to contest the issue in a prior proceeding.'" *Id.* at 761-62 (quoting *Powell*, 289 S.W.3d at 446).  Judge Bell's letter opinion and order reflect that the parties raised the issue of whether the debtor breached his fiduciary duty in the pleadings and litigated it at

---

[7] Sneed failed to produce independent evidence on this point sufficient to permit this court to rule in his favor on the section 523(a)(4) cause of action respecting the holographic will.

9

trial. Furthermore, the debtor actively participated in the proceedings. As such, the second element of the collateral estoppel doctrine is satisfied.

*3. The issue must have been determined by a valid and final judgment.*

The third prong of the collateral estoppel doctrine requires the issue to have been determined by a valid and final judgment. This element is clearly met. Judge Kathleen Bell entered a letter opinion detailing her findings of fact and law, which she incorporated into an order dated March 17, 2009. The court's order found that the debtor breached his fiduciary duty to the beneficiaries of the G.W. Lescher trust and awarded the sum of $298,000 to Sneed for the debtor's breach.

*4. The determination must have been essential to the judgment.*

The last element requires a determination that the debtor's breach of his fiduciary duty was essential to the judgment entered by the state court. In its order, the state court clearly detailed the actions and inactions of the debtor that resulted in his breach of fiduciary duties associated with the G.W. Lescher trust and that established the judgment entered by the court against the debtor. The final prong of the collateral estoppel doctrine is met.

Since the four elements of the collateral estoppel doctrine have been met, this court is precluded from relitigating the issues previously decided by the Cross County Circuit Court; therefore, the $298,000 judgment entered by the Honorable Kathleen Bell is declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### IV. CONCLUSION

For the reasons stated herein, the court finds that the Complaint is granted in part, reserved in part, and denied in part. The debt owed to the G.W. Lescher trust in the sum of $298,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). The debt owed to the G.H.

Lescher estate for $6,326.44 is dischargeable. The exemptions issue is reserved. A separate judgment will be entered against the debtor as provided herein.

IT IS SO ORDERED.

    Dated this 3rd day of June, 2010.

                                              RICHARD D. TAYLOR
                                              U.S. BANKRUPTCY JUDGE

EOD 6/4/2010
by S Bailey

cc:    Danny W. Glover, Attorney for Todd Sneed
        Larry J. Hartsfield, Debtor
        Todd Sneed, Plaintiff
        O.C. "Rusty" Sparks, Attorney for the Debtor
        Charles W. Tucker, Assistant U.S. Trustee